AUGUSTA G. GENET, APPELLANT, *v.* THE PRESIDENT, ETC., OF THE DELAWARE AND HUDSON CANAL COMPANY, RESPONDENTS.

*Lease and contract for sale of coal to be mined — right of lessee to make use of any other product than the kind to be paid for under the contract.*

In an action based upon an agreement which had been entered into between the plaintiff and the defendant, under which, for each ton of clean and merchantable coal, exclusive of culm or mine waste, to be passed through a mesh of one-half square inch, taken from certain coal lands in the State of Pennsylvania, the defendant was required to pay twelve and one-half cents, the complaint alleged that the defendant in preparing the coal for market used a mesh five-eighths of an inch square instead of half an inch square, in consequence of which ten per cent of all the coal mined, or 30,000 tons, had passed through the five-eighths mesh, which would have gone over the half-inch mesh.

It was also alleged that the defendant had prepared what was known as pea coal, by screening the coal which had passed through the five-eighths mesh over a mesh of seven-sixteenths of an inch.

And, also, that the residue of the coal remaining after the preparation of the pea coal was again screened by the defendant and separated into two grades, buckwheat and birdseye coal, and that 100,000 tons of such coal had been taken and carried away by the defendant.

And, further, that although the defendant had mined and taken away from the land at least 1,200,000 tons of coal, it had paid the plaintiff for less than one-half that amount, and asked for a general accounting for the value of all coal mined.

At the time the contract was made all the sizes of coal, called pea, buckwheat and birdseye, were considered worthless, and were included in the waste products of the mine under the name of culm.

*Held*, that there was no intention on the part of the plaintiff to convey to the defendant any beneficial result of the mining operations, as a gratuity.

That it was the duty of the defendant to pay for all coal mined and taken out, in pursuance of the agreement, exclusive of the coal which possessed no marketable quality.

That while the defendant might not have had a right, under the terms of the agreement, to utilize the culm, yet, having done so, the product became a part of the subject-matter of the contract and gave the plaintiff the right to insist upon compensation therefor.

That, in any event, the defendant had utilized the culm, in which the agreement gave him no rights, which was, in fact, owned by the plaintiff, who thereby acquired a cause of action against the defendant. (VAN BRUNT, P. J., dissenting.)

APPEAL by the plaintiff from a judgment entered in the office of the clerk of the county of New York on the 19th day of October,

1889, after a trial before a referee appointed to hear and determine the issues in the action.   The judgment was in favor of the plaintiff and against the defendant for $4,947.21, and directed that the third cause of action alleged in the complaint be dismissed upon the merits.

The complaint alleged that the plaintiff was the owner in fee, as her separate estate, of about one hundred acres of coal land in Pennsylvania; that the defendant was a corporation duly incorporated by an act of the legislature of the State of New York, engaged in the business of mining coal and transporting the same to be sold in New York and at other places; that an agreement had been entered into by which the defendant leased "all the coal contained in, on or under that certain piece or parcel of land," etc.,   *   *   * "to include all the coal that can be economically mined or taken out from the above described premises, together with the right to enter upon and into said lands and to dig and mine and remove said coal through or out of any shafts, slopes or tunnels that they may dig, erect or construct upon the premises,   *   *   *   and the said party of the second part agrees to pay for the coal mined and taken out in pursuance of this agreement at the rate of twelve and one-half cents (12½) for every ton of (2,240) twenty-two hundred and forty pounds of clear merchantable coal, exclusive of culm or mine waste, that will pass through a mesh of one-half inch square."

*G. C. Genet,* for the appellant.

*F. E. Smith,* for the respondent.

Brady, J.:

The judgment appealed from is two-fold: First, a money judgment in favor of the plaintiff for $4,947.21; and, second, a judgment dismissing one cause of action upon the merits. If, upon a consideration of the whole case, therefore, the judgment dismissing the cause of action suggested is erroneous, there must be a new trial without reference to the exceptions relating to other parts of the case.

The basis of the action is an agreement between the parties by which certain coal lands in the State of Pennsylvania were leased to the defendant, one of the terms of which required the defendant to pay twelve and a half cents for each ton of clean and merchantable coal, exclusive of culm or mine waste, to be passed through a mesh of one-half square inch.

The first cause of action, after referring to the agreement mentioned, the working of the mine and the rendering of accounts, alleges that the defendant, in preparing the coal for market, used a mesh five-eighths of an inch square instead of half an inch square as required by the agreement, and that, as a result, ten per cent of all the coal mined, or 30,000 tons, had passed through a five-eighths mesh, which would have gone over a half-inch mesh, and this amount was omitted from the account.

The second cause of action alleges the preparation by the defendant of what is known as pea coal by screening what goes through a five-eighths mesh over a mesh of seven-sixteenths of an inch, and seeks to recover the stipulated royalty on the whole of the pea coal taken from the mine in question, and claimed to amount to 150,000 tons.

The third cause of action alleges that the coal left, after the preparation of the pea coal, is again screened by defendant and separated into two other grades of coal called buckwheat and birdseye, and that such coal, to the amount of 100,000 tons, had been taken and carried away by the defendant, the value of which was $35,000, which sum was claimed.

The fourth cause of action was a charge that the defendant had mined and taken from the land in question at least 1,200,000 tons of coal, but had paid plaintiff for less than half that amount, and that the accounts rendered by the defendant were false. The prayer for judgment was for a general accounting for the value of all coal mined; for the value of the small coal that would pass through a half-inch mesh, that is, all pea coal and all buckwheat and birdseye coal; for damages to the amount of $10,000, caused by recrushing the coal and reducing the same to dust or culm, and for general relief.

In reference to these different sorts of coal the referee found that the various sizes or grades in which anthracite coal is placed upon the market are called lump, steamboat, grate, egg, stove, chestnut, pea, buckwheat and birdseye, and these sizes, with the exception of pea, buckwheat and birdseye, were substantially the same as those in which anthracite coal had been placed upon the market for more than forty years, and that the sizes of coal, now called pea, buckwheat and birdseye were formerly considered worthless, and were included in the other waste products of the mine under the name of

culm; that the size now called pea was first separated from the culm and put on the market about 1857, but did not become one of the sizes commonly dealt in until about 1865, or later, while buckwheat and birdseye have been so separated and sold only since about 1880. As will have been observed, the third cause of action relates to the size just mentioned, and which was dismissed upon the trial.

The question which presents itself *in limine* is whether the dismissal of that cause of action was erroneous or not. The agreement was made on the 28th of March, 1864, and contains the following : " And the said party of the second part agree to pay for the coal mined and taken out, in pursuance of this agreement, at the rate of twelve and a half cents (12½) for every ton of (2,240) twenty-two hundred and forty pounds of clean merchantable coal, *exclusive of culm or mine waste that will pass through a mesh of one-half inch square.*"

At that time, as found by the referee, the sizes now called pea, buckwheat and birdseye were considered worthless and were included in the other waste products of the mine under the name of culm. It is quite apparent that the language of the agreement, to which particular attention has been called, exclusive of culm or mine waste, was adopted with reference to the then supposed worthlessness of that product of the mine. And it is equally evident, from an interpretation of the whole instrument, that there was no intention on the part of the plaintiff to convey to the defendant any beneficial result of mining operations as a gratuity ; nor is there any ground for the defendant to claim the right thereunder to appropriate the same to its own advantage without due compensation. The manifest design of the agreement was to authorize the defendant to conduct such mining operations as would develop a marketable article for which a marketable compensation was to be paid. It was thereby made the duty of the defendant to pay for all coal mined and taken out in pursuance of the agreement, exclusive of culm or mine waste ; so exclusive because it was supposed to possess no marketable quality, and, indeed, had none, as already suggested, until 1865, and subsequent to the making of the agreement between the parties.

It makes no difference whether the agreement makes the defendant the absolute owner of the coal, as if by deed in fee simple, or a

lessee with rights and privileges in reference to the mineral found upon or under the surface, inasmuch as the mining of the coal involved the payment for its appropriation of a royalty agreed upon by the parties. It would be absurd to hold that, under such an agreement, no matter how it may be designated in legal parlance, the coal was transferred unqualifiedly, and it is not at all likely that any court of justice will so adjudicate. Whenever coal is taken from the land embraced within the agreement, it must be paid for whether it is the result of a new process with regard to culm or not.

It is true that the defendant, under a strict construction of the agreement, would be under no obligation to utilize the culm, but, having done so, the product became a part of the subject-matter of the contract and gave the plaintiff the right to insist upon such compensation as might be awarded, if the royalty provided for by the agreement had no application. But even if this be not so, the utilization by the defendant of the culm in which he had no property, and as to which the agreement gave it no rights, and which was, in fact, owned by the plaintiff, created an independent cause of action which could be enforced herein, but which was disregarded by the referee, and it is thought erroneously.

The record in this case has been the subject of many examinations with its numerous exceptions and complications, but the recurrent thought has been that the exclusion of the third cause of action was improper, and deliberate consideration of that proposition has led to the conclusion herein stated, a conclusion which renders it entirely unnecessary to consider any of the other exceptions presented on behalf of the plaintiff.

The judgment should be reversed and a new trial ordered, with costs to appellant to abide event.

DANIELS, J., concurred.

VAN BRUNT, P. J. :

I dissent from the conclusions of Mr. Justice BRADY and concurred in by Mr. Justice DANIELS. The coal lands were leased to the defendants for mining purposes. The rents were fixed upon the basis of a payment of twelve and a half cents for every ton of merchantable coal which would pass through a mesh one-half inch

square. The evidence showed that this necessarily excluded buckwheat and birdseye coal. It is evident that all the coal mined by the defendants belonged to them, and if they found, after the execution of the lease, that they could make use of what they previously had been compelled to throw away, I see no basis arising from that fact for a change in the standard by which the rent is to be measured. The parties fixed the method of determining the rent and the court cannot now alter the contract.

Judgment reversed and new trial ordered, with costs to appellant to abide event.