changed by what follows.   The gift over in case of the death of the legatee during minority, instead of suspending the vesting ab initio, denotes that the prior words point merely to the period when the legacy becomes absolute in enjoyment.   See Mr. Bigelow's note, page 855 of Jarman on Wills (5th Ed.).   Jarman (page 850) says that, if the testator has given over the fund in case the legatee dies before the time named without issue, from which it is to be inferred that the legatee is to retain it in every other case, the natural conclusion is that 'the word is to be read as meaning "payable" or "indefeasible," and that the gift is vested, liable only to be divested on a particular contingency.   By the provision that upon the death of the legatee the bequest shall go to her issue, and, in default of issue, to the testator's heirs, such issue or heirs, as the case might be, will take as substituted legatees, upon the happening of the prescribed event, namely, the death of the original legatee.   These ulterior dispositions do not affect the main question.   They are equally appropriate whether the legacy was vested or contingent.   Consequently they throw no light upon the testator's intention, nor do they vary the clear expression of that intention to be found in the preceding provision. The surrogate had authority, under chapter 173 of the Laws of 1891, to make the order in question.   Whether it should be made was a matter of discretion, which the record shows was fairly exercised. The surrogate was not bound to put the estate to the expense of a. reference to ascertain the necessity for this trifling allowance.   The petition is supported by an affidavit, while the executors rested upon an answer to the petition merely ignoring the essential facts, and not denying what is stated in the affidavit.

The order should be affirmed, with costs.   All concur.

GENET v. PRESIDENT, ETC., OF DELAWARE & H. CANAL CO.

(Supreme Court, Appellate Division, First Department.   March 20, 1896.)

1. MINING CONTRACT—INTERPRETATION.
   A memorandum of agreement leasing all the coal in or under a parcel of land, specifically described, the amount of which is to be determined by the actual result of the mining process, and the liability to mine it by the quality of the coal and attendant expense, is an executory contract, and not a deed.   32 N. E. 1078, 136 N. Y. 602, followed.

2. SAME—NEGLIGENCE.
   Such contract implies a promise on the part of the lessee that it will not negligently incapacitate itself from mining more than a minimum amount of coal, and, for a willful violation of its duties in respect to the method of conducting the work, the lessor is entitled to a termination of the contract, though the coal upon the land has not been exhausted.

Appeal from superior court of New York City, special term.

Action by Augusta C. Genet against the president, etc., of the Delaware & Hudson Canal Company, to declare a contract executed, to compel a removal of personal effects from plaintiff's land, and for equitable relief.   The contract sued on is, in effect, a memorandum of agreement which certifies that plaintiff has leased to defendant all the coal contained in or under the parcel of land specifically described.

The agreement stipulates that, if the coal shall not prove to be of a merchantable quality, or the mining of it become more expensive than mining from the same veins on other lands in the vicinity, then the liability of defendant to mine and pay for the coal shall cease, and that, if the coal mined in any one year shall fall below the quantity agreed to be taken out in such year, in consequence of the increased expense of mining, or if the land shall become so exhausted as to render it unprofitable to mine the stipulated quantity, then defendant shall pay for only the quantity that can be economically taken out. There is a further limitation that defendant shall pay royalty only on such clear merchantable coal as will not pass through a mesh of one-half inch square. Defendant agrees to pay a certain royalty per ton on all coal of the prescribed quality which shall be taken out of the mine, and also covenants for a minimum rent by agreeing to take out not less than 20,000 tons each year, and leaving itself free to mine as much more as its interests shall require. To enable defendant to mine the coal, plaintiff granted the use of so much of the surface to make openings, roads, etc., as was necessary, the agreement winding up with a clause that, within a reasonable time after plaintiff's land was exhausted, defendant would remove its buildings, etc., from the land. From a judgment in favor of defendant (35 N. Y. Supp. 147), plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, WILLIAMS, and PATTERSON, JJ.

Geo. C. Genet, for appellant.
F. E. Smith, for respondent.

VAN BRUNT, P. J. This action was brought in February, 1893, for the purpose of declaring the contract mentioned in the complaint executed and ended, and compelling the defendant to remove its personal effects from the property which was the subject-matter of the contract, and which was situated in the state of Pennsylvania; and relief was also asked that the defendant, its agents and servants, be enjoined and restrained from claiming any further interest in the property under the agreement, or from claiming or alleging any right, title, or claim thereto, and from denying the rights of plaintiff to the property free of the agreement, or in any way interfering with plaintiff's right and title to the premises, the same as if said agreement had never been made, or that they be adjudged to release the same to the plaintiff. The defendant answered, putting in issue the material allegations of the complaint. The issues thus formed came on for trial, and the court awarded judgment dismissing the complaint upon the merits. The grounds for the decision were: (1) That the coal upon the lands described in the complaint as belonging to the plaintiff is not exhausted, and that defendant did not commit any act or suffer any default respecting said lands of the plaintiff which justifies putting an end to the contract referred to in the complaint, or which entitles the plaintiff to the equitable relief she claims, or to any relief consistent with the causes of action alleged. (2) That the instrument sued upon is in the nature of a grant of coal under the surface,

and the defendants have acquired a base fee therein, determinable only when the coal upon said lands, and upon the adjoining and contiguous lands, is exhausted; and said coal is not exhausted.   (3) That the question of title concerning said coal, and the construction of the instrument sued upon, must be determined by the law of the state of Pennsylvania, where the lands are situated; and the law of said state concerning title to such lands is as testified to by Chief Justice Paxon and Judges Hand and Heydrick, the experts produced by the defendant.   From this judgment the present appeal is taken.

In the consideration of the questions presented upon this appeal, it will be necessary to comment upon the various litigations which the parties to this action have had since the execution of the agreement referred to in the complaint.   It appears that, in November, 1881, the plaintiff brought an action in the superior court of the city of New York, claiming violations of the agreement on the part of the defendant in its failure to work the coal mines to the extent contemplated by the agreement, and in the erection of works upon the premises not contemplated by the agreement, and making the lands of the plaintiff subservient to adjoining lands belonging to the defendant. The plaintiff claimed damages by reason of the breach of the agreement, and an injunction restraining the use of her lands for the benefit of adjoining lands.   The defendant answered, admitting the agreement, denying its violation, and alleging a prior adjudication between the parties.   The action was tried before a referee, who reported in favor of the plaintiff, and a judgment was thereupon entered, in February, 1887, adjudging the plaintiff entitled to recover damages, and also adjudging that the defendant should be enjoined and restrained from using certain erections upon the lands of the plaintiff for the purpose of mining and preparing for market coal from the defendant's lands or from any other adjoining or contiguous lands, and enjoining and restraining the defendant from depositing the waste from coal mined from land other than the land of the plaintiff, upon the surface of the plaintiff's lands, and also restraining it from running the water from other contiguous lands upon the plaintiff's lands for the purpose of draining the former.   An appeal was taken to the general term by the defendant from this judgment, and it was modified.   The defendant thereupon appealed to the court of appeals, and the judgment against the defendant was reversed and the complaint dismissed, with costs, the court holding that the legal effect of the agreement between the parties was to vest in the defendant an estate in fee in the coal as a separate piece of land, and that the defendant acquired a present, absolute, distinct, and independent right to the use of the structure upon the plaintiff's land for the mining of coal on the adjacent lands, and that the only obligation which rested upon the defendant as to the quantity of coal to be mined from the plaintiff's land was to mine the quantity specified each year, and while it fulfilled that obligation the defendant's right to take coal from the adjoining property through plaintiff's land could not be interfered with, and that the defendant had the right to pile upon plaintiff's land the refuse coal taken from the adjoining lands,

and that it also had the right to take the water from its adjoining lands upon the plaintiff's lands for the purpose of facilitating them in drainage.    122 N. Y. 505, 25 N. E. 922.

In March, 1888, the plaintiff commenced another action in the supreme court of this state, alleging improper, unskillful, and unworkmanlike management in the conduct of the mining operations by the defendant upon the lands of the plaintiff, whereby the mine situated upon the plaintiff's land was seriously injured and its value impaired, and damages to a large amount were claimed because thereof.   The defendant demurred, upon the ground that the court had no jurisdiction of the subject of the action, and that the complaint did not state facts sufficient to constitute a cause of action.   The special term overruled the demurrer, and from the judgment thereupon entered an appeal was taken to the general term, and the judgment was reversed, and the complaint dismissed.   An appeal from this judgment was taken to the court of appeals, where the judgment of the general term was reversed, and that of the special term affirmed (136 N. Y. 593, 32 N. E. 1078);  the court holding that, although the second division of the court of appeals had, in the action hereinbefore referred to as being brought in the superior court, expressed the opinion that this contract operated as a deed to convey the coal to the defendant, such decision was not material to a disposition of the case before that court, nor was it necessary to its determination or within the issues presented, and it was not, therefore, necessarily the law between the parties, although the court might regard it as a precedent;  but that the right of the defendant to use the shafts and machinery on the plaintiff's lands in aid of the mining operations on adjoining lands, the right to pile waste upon the surface of the plaintiff's land, and the right of drainage thereon, were involved in the action before that court, and its decision settled the law upon this subject between the parties.   The court then proceeded to examine the question as to whether the contract between the parties did or did not convey the coal in fee, and held that, neither by the law of the state of New York, nor by the law of the state of Pennsylvania, as gathered from the decisions of that state, was the agreement between the parties a present conveyance of the coal upon the plaintiff's land, but was an executory contract, the thing sold and the price to be paid being dependent upon the revelations of the coal-mining process.   And the court further held that the terms of the agreement raised an implied promise of the defendant not willfully or negligently to incapacitate itself from taking out more than the minimum quantity of coal;  that it was not in the contemplation of the parties that the plaintiff should be compelled to content herself with the minimum rate of royalty provided for by the agreement, but that she had a right to rely upon the fact of the advantageous nature of the contract to the defendant, and that their own interests would necessarily induce them to mine all the coal which was possible, and by this means the royalty to the plaintiff would be increased far above the minimum;  and that if, by unskillful conduct, this result was rendered impossible, the plaintiff had a right of action upon this implied promise of the defendant

for the damages sustained by the willful or negligent acts of the defendant whereby it incapacitated itself from taking out more than the minimum quantity of coal.

In Re Kings County El. Ry. Co., 112 N. Y. 47, 19 N. E. 654, the right of the company to build its road, although the specifications and plans filed under the law were indefinite upon certain points, was sustained by the court upon the same principle, namely, that the interests of the parties building and operating the road would necessarily impel them to make the structure conform to the requirements of the statute, although their specifications and plans were not definite in that regard.

In view of the decision of the court of appeals upon the question as to whether this was a present conveyance or an executory contract, it does not seem necessary to discuss the subject any further.    It is clearly in opposition to the view which was taken by the learned judge in the court below in the disposition of this case.    He held, notwithstanding this decision of the court of appeals upon this identical contract, that the instrument in question was a deed, and that the question of title concerning the coal, and the construction of the instrument, must be determined by the law of Pennsylvania, and, inferentially, that such was the law of that state.    It is true that he also held that the plaintiff was not entitled to relief, because the coal upon the land had not been exhausted, nor had the defendant committed any act or suffered any default respecting the lands of the plaintiff which justified putting an end to the contract, or which entitled the plaintiff to any relief consistent with the causes of action alleged.    But it is manifest that the basis of his decision was his interpretation of the instrument, and it seems to be equally clear that such interpretation is different from that which has been placed upon it by the court of appeals in another action between the same parties. It may be entirely true that the court was justified in finding that the contract had not been executed because of the exhaustion of the coal upon the land of the plaintiff, but it is not so apparent that the plaintiff may not be entitled to some relief under the implied promise contained in the agreement as interpreted by the court of appeals, by reason (if she establishes the fact) of the unskillful manner in which the defendant has conducted its mining operations under the agreement. It may very well be that such a state of facts might be shown as would justify the court in terminating the contract because of the willful violation by the defendant of its duties in respect to the method of conducting the work, rendering it unsafe and improper for the plaintiff to permit her property to run the risk of absolute destruction if left to the tender mercies of the defendant.

We think, upon the whole case, therefore, that the judgment should be reversed, and a new trial had, with costs to the appellant to abide the event.    All concur.