It is urged that upon a new trial the plaintiff cannot better his case, and that. therefore, a new trial would be an idle ceremony. Thia contention, however, whatever it may be worth, assumes too much. It is not impossible that the plaintiff might upon a new trial be able to present additional facts, which would rebut the inference drawn by the court of appeals from the facts then before it, that the plaintiff had full knowledge of the acts complained of. Upon both authority and principle, then, it seems to me that the court of appeals had the power to reverse the order of the general term in part, and to affirm it in part; that, having entertained the single appeal of the defendant Burke, its judgment was operative only with respect to his rights and status in the litigation; and that the effect of the judgment was to reverse the order as to him alone, leaving it to stand as to the other defendants, who, technically, were satisfied with it. The judgment of this court made and entered upon the remittitur from the court of appeals, as amended by the order bearing date on the 31st day of March, 1896, seems to follow this theory, for it awards judgment to Burke alone, dismissing the complaint on the merits.

It follows from what has been said that the motion to vacate the order directing the clerk to erase from the docket of the original judgment the memorandum that the order of the general term was reversed, and the judgment of the special term affirmed, must be denied.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, O'BRIEN, and INGRAHAM, JJ.

James W. Hawes, for appellant.

Root & Clarke (A. C. Hume, of counsel), for respondent.

PER CURIAM. Order affirmed, with $10 costs and disbursements, on opinion of the court below.

---

GENET v. PRESIDENT, ETC., DELAWARE & H. CANAL CO.

(Supreme Court, Appellate Division, First Department.   February 5, 1897.)

1. MINES—LEASE—CONVEYANCE IN FEE.
     A lease, and not a conveyance in fee, is effected by an instrument which gives the right to mine "all the coal contained in, on, or under" certain lands in Pennsylvania, but further provides that the lessee may select the coal which it will take and pay for.

2. CONTRACTS—INTERPRETATION.
     The interpretation of a written instrument under the law of Pennsylvania is a question of law for the court, and therefore where the court of appeals of New York held that an instrument concerning land in Pennsylvania was an executory contract, and not a conveyance, it is the duty of the trial court, in another action between the same parties relating to the same contract, to follow the construction thus given.

3. MINING LEASE—INTERPRETATION.
     A mining lease reserving a certain royalty per ton for "clear, merchantable coal, exclusive of culm that would pass through a mesh of one-half inch square," does not give the lessee the right to the culm, and therefore, where the culm became marketable after the execution of the lease, the sale of it by the lessee was a conversion for which he was liable to the lessor.

4. SAME—MEASURE OF DAMAGES FOR CONVERSION.
     The measure of damages for small coal converted by defendants while mining larger pieces under a lease, where the production of the smaller was a necessary incident to the mining of the larger sizes, is the value of coal at the time and place at which it was taken, without allowance for the expense of mining.

5. SAME—"MARKET ROYALTY"—EXCLUSION OF EVIDENCE.
     It was not error, in an action for the conversion of coal by the lessee of a coal mine, to exclude testimony as to what was the fair "market royalty"

paid for the class of coal converted, in connection with leases or contracts by which the right to take other and larger sizes of coal was granted, since the action was not for royalties under the lease.

Appeal from judgment on report of referee.

Action by Augusta G. Genet against the president, managers, etc., of the Delaware & Hudson Canal Company to recover royalties, and to recover the value of coal converted. From a judgment in favor of plaintiff, entered on the report of a referee, defendant appeals. Affirmed.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Frank E. Smith and Matthew Hale, for appellant.
George C. Genet, for respondent.

PATTERSON, J.    The instrument by which the contract relations between the parties to this action were established has been a fruitful source of litigation in the courts of this state, and some of the rulings heretofore made have a controlling influence in the disposition of this appeal, and will be referred to hereafter.   This particular action was brought to recover moneys, a part under the provisions of that instrument, and a part independently of its terms; that is to say, to recover royalties on a certain quantity of coal, which royalties are provided for by the terms of the instrument, and also to recover the value of certain other quantities of coal, alleged to have belonged to the plaintiff, and to have been taken by the defendant, and which were not covered by nor included in any provision for compensation contained in the instrument.   It is shown by the record that in the year 1864 the plaintiff was the owner of a tract of land in the county of Luzerne, in the state of Pennsylvania, under the surface of which were certain beds or veins of coal; and on the 28th of March of that year she entered into an agreement in writing with the Delaware & Hudson Canal Company, which is generally referred to as a lease, and which recites that the party of the first part hath leased and doth hereby lease, etc., "all the coal contained in, on, or under that certain piece or parcel of land," describing it. The coal is referred to as "that supposed to be contained" in certain named veins, but, in any event, to include all that can be economically mined or taken out from the above-described premises.   The right to enter upon and dig and mine and remove coal, to make shafts, slopes, or tunnels, the right of way for railroads, switches, ditches, drains, the use of the land for digging air shafts, the use of all the land required for repair shops and for piling coal or culm, and all other appurtenances required for mining, receiving, and removing, cleaning, screening, etc., were also conceded by the instrument.   It also contained a provision that the canal company should mine not less than a stated quantity, and also "that, if the coal in any of the veins should not prove to be of a merchantable quality, or if it became impracticable to mine the same in consequence of extraordinary expense in mining or cleaning said coal, or if the veins should prove to be of such quality and thickness that the coal can-

not be mined and prepared for market without greater expense "than that incurred in taking coal from the same veins in mines which belong to the canal company," then the liability of that company to mine, take, and pay for said coal should cease.   Other provisions are made with reference to the cessation of liability of the company under certain stipulated contingencies.   The defendant contracted to pay for coal mined and taken out in pursuance of the agreement at the rate of $12\frac{1}{2}$ cents for every ton of 2,240 pounds of clean, merchantable coal, exclusive of culm or mine waste that will pass through a mesh of one-half inch square, payments to be made in a certain way and at certain times.   The defendant agreed to erect scales to weigh the coal, and to do other things not necessary now to mention.   What was meant by "merchantable coal" is defined, and the defendants were authorized by the agreement to use and occupy "the rights and privileges hereby granted to the openings, buildings, fixtures, and appurtenances made and constructed by them for the mining, preparing, and forwarding coal under this agreement for the mining, preparing, and forwarding coal from any adjoining or contiguous lands until all the lands they desire to take coal from, and that can be mined and taken out through said openings, shafts and slopes shall be exhausted."   The defendant entered into the possession of the land, began mining operations, constructed breakers, and supplied whatever accessories were necessary to the business of mining, and took from the plaintiff's land large quantities of coal, and made returns of what it claimed to be the amount mined, and for which royalties were due; and from time to time made payments of such royalties upon the basis of the accounts furnished by it.   The plaintiff claims that sometime in 1886 it was discovered that the defendant had not made correct returns, had failed to account and pay for as much coal as it had taken, and that it had also failed to comply with the terms of the contract respecting the use of the proper mesh over which coal to be paid for was to pass by the terms of the contract.   It would appear from an analysis of the contract that all the coal mined by the defendant, and which was merchantable coal that would pass over a screen of a one-half inch mesh, was to be paid for by the defendant.   All that would fall through a screen of a one-half inch mesh was considered as mine waste, denominated "culm."   The plaintiff claimed in the complaint, and the fact was proven, that the defendant did not account and pay for all coal upon the basis of its passing over a one-half inch mesh, but instead used a screen with a mesh five-eighths of an inch, the result being that much coal mined and screened passed through the five-eighths of an inch mesh that would have passed over the one-half inch mesh.   That coal thus passing through the five-eighths of an inch mesh being excluded from the contract, it became and remained the property of the plaintiff, except about 26,000 tons thereof, which it is stipulated comes under the contract at the agreed royalty, and which the defendant did not account to the plaintiff or pay for; and the first cause of action set forth in the complaint is to recover the royalty upon that 26,000 tons.

It appears that at the time the instrument or agreement was en-

tered into all the coal to be mined and that would pass through the one-half inch mesh, or mine waste, was an unmerchantable, useless product, and one substantially without value; but subsequent discoveries or inventions converted this waste product into a valuable commodity or article of merchandise, and from it the defendant prepared and sold coal denominated "pea coal", or "buckwheat and birdseye coal," or it used large quantities of the culm in connection with its own mining operations. The second and third causes of action are for the recovery of the value of the small coal thus made, used, or sold by the defendant, the basis of the plaintiff's claim being that all this product belonged to her, inasmuch as it was excluded from the terms of the written instrument, and was not a part of the coal sold to the defendant. There is another cause of action set out in the complaint which does not seem to be of any special importance here.

It will thus be seen that the present action is brought to recover under the contract the stipulated royalty on coal alleged not to have been accounted for under the contract, and for other coal, the property of the plaintiff, taken or used by the defendant outside of the terms of the contract. Apart from the general denials contained in the answer, there are specific defenses set up which give rise to the questions we are now to determine. Such specific defenses are, in substance: First. That the defendant has accounted and paid for all the coal upon which it was bound to pay royalties under the terms of the written instrument, except as stipulated. Second. That the defendant is not bound to pay anything, and is not liable to the plaintiff for any of the "pea," "buckwheat and birdseye" coal, or for any of the culm used, because the defendant is the owner of all the coal contained in the tract of land referred to in the instrument, it being contended that that instrument operates as a conveyance of the coal in place, and conferred an absolute title thereto and ownership thereof on the defendant. Third. That it has heretofore been adjudged in an action between these parties in the superior court of the city of New York that the ownership and title of the coal contained in the tract of land referred to was in the defendant, and that a judgment rendered in said superior court to that effect was affirmed in the Second division of the court of appeals (25 N. E. 922), and is a binding adjudication upon the parties hereto; that the question of title and ownership was a material issue in that action; and that, as a consequence of such judgment, the rights of the parties have been fixed and determined. Other defenses are set up in the answer, but they are not material to the decision of the present appeal.

It is unnecessary to make any extended reference to the first defense, because the record discloses that the plaintiff stated upon the trial that she made no claim for judgment under the first and fourth counts or causes of action, except for amounts appearing to be due under the stipulation, and that relates to the 26,000 tons of "pea" coal. The second specific defense is presented as one of fact involving the ascertainment of the law of the state of Pennsylvania applicable to and defining the nature of an instrument of the char-

acter and containing the provisions of that now before the court. The contention of the defendant is that, inasmuch as this instrument relates to land situated in Pennsylvania, it must be construed, and the rights and liabilities of the parties determined, by the law of that state. What it claims to be that law is set up in the answer, and on the trial it made the effort to prove by the testimony of witnesses learned in the law of Pennsylvania, and by the reports of adjudicated cases in the courts of that state, that such instruments as the one before us operate as conveyances, and devolve upon the lessee the ownership of the coal in place and unsevered from the land. The learned referee before whom this cause was tried found as a fact that there is no law peculiar to Pennsylvania governing the construction of written instruments, but that the rule of the common law prevailing in New York, that the intention of the parties is to be gathered from the terms of the instrument, prevails in like manner in the state of Pennsylvania. There was testimony to support that finding given by the witness Harding. But the contention of the defendant goes further, and it is claimed that by a long line of judicial decisions in reported cases read before the referee it is established as a matter of fact that the true interpretation of this instrument is that it conveyed the ownership of the unmined coal to the defendant. The defendant's witnesses as to the law of Pennsylvania were two eminent counsel at the bar in that state, both of whom had occupied high judicial position,—one of them Judge Hand, who testified somewhat in detail as to the effect of the decisions of the courts upon this subject; and the other Chief Justice Paxton, who merely certified to his general acquiescence in what was deposed to by Judge Hand. In the testimony of the last-named gentleman, he states that the rules of law deducible from the Pennsylvania decisions upon the subject of instruments relating to coal operating as a conveyance require the concurrence of three things to make such instruments effectual as conveyances: First, the instrument in writing must either in terms, or by necessary inference gathered from the whole writing, convey all the coal in the tract of land described in the contract; in the second place, the right to mine and take must be exclusive of the grantor; third, the grantee must either mine all the coal, or agree to pay for it, which is the same thing. Looking at this question for the present merely as one of fact, and examining this instrument in connection with the requirements related by the witness, we certainly do not find in its terms, and are not able to draw the conclusion as a necessary inference, that it conveyed all the coal in the tract of land described in the contract. The instrument certainly does start out with the statement that the plaintiff had leased "all the coal contained in, on, or under" the land, but its subsequent provisions clearly and distinctly limit that general phraseology, and give to the defendant the right of selection of what coal it will take and what coal it will reject after that coal is mined, for what it is to take and what it is to pay for is only the merchantable coal, and such as shall be declared to be merchantable by the superintendent of the defendant's mine, whose

43 N.Y.S.—38

decision as to the quality, according to the terms of the contract, is to be final and conclusive. Regarding the question, therefore, purely as one of fact, and giving to the Pennsylvania decisions as much effect as can reasonably be claimed for them, we do not think that the fair interpretation of this contract would bring this instrument within the law of that state, and establish it as an absolute conveyance of the coal before it was mined. But the interpretation of this contract does not depend upon the determination of a question of fact, but it is a question of law. The interpretation of all contracts in writing is for the court, and the court of last resort in this state has given construction to this particular contract, and has determined that it is merely an executory contract for the sale of coal to be mined. It was so held by the court of appeals in 136 N. Y. 593, 32 N. E. 1078, and it was so held by this court in another action between the same parties (2 App. Div. 491, 37 N. Y. Supp. 1087). The court of appeals, in its construction of the contract, clearly defined what it was, and held that it was only an executory contract, and that it was not, and did not operate as, a conveyance of the coal veins or strata; that its subject-matter was mineral product, not land; that the contract was executory in its nature, what and how much coal was to pass under it being made dependent on the revelations of actual mining, and that the defendant was not required to take out coal which did not so pass, or entitled to take any coal that it did not pay for. This interpretation was given upon the ordinary rules of construction applicable to instruments of this character. It was the intention of the parties that was to be ascertained and given effect to, and the nature of the contract was declared as above stated. That adjudication is binding upon us, as we held in the case reported in 2 App. Div. and 37 N. Y. Supp., namely, that where the court of appeals has passed upon the rights of the parties to an agreement in one action, it is the duty of the trial court, in another action between the same parties, relating to the same contract, to follow the construction given to that contract by the court of appeals; and therefore the referee properly held that this instrument is not a conveyance, but is simply a contract of the nature determined by the court of appeals.

But it is further claimed on the part of the defendant that the matter of construction of this contract is one adjudicated by the Second division of the court of appeals on an appeal from the judgment entered in the superior court. The Second division of the court of appeals certainly did declare that this instrument is a conveyance, and not an executory contract; that its legal effect was to vest in the defendant an estate in fee in the coal as a separate piece of land. The decisions of the two branches of the court of appeals construing this instrument are in direct conflict. It is claimed that the adjudication in the superior court is a decision on the merits, and that the question of the construction of the contract was a material one, and necessarily involved in the determination of the merits. It is urged, therefore, that what was decided in the Second division must be the law of this particular case;

and that what was held by the court of appeals in 136 N. Y. and 32 N. E. arose only upon demurrer, and that the court did not have before it as evidence the record showing what was involved in the superior court action, and that the decision in 136 N. Y. and 32 N. E. should be treated as only conclusive as to the point involved in the determination of the demurrer, namely, the sufficiency of the allegations of the complaint to constitute an enforceable cause of action. The estoppel of the superior court judgment, if it be an estoppel, would certainly apply to every material matter within the issues raised by the pleadings in that case upon which actual proof was given, and also to every matter directly put in issue by the pleadings which might have been litigated by the unsuccessful party. In speaking of the decision of the Second division (122 N. Y. 505, 25 N. E. 922), Judge Finch, writing for the court, in the opinion reported in 136 N. Y. and 32 N. E., says:

"It is quite true that in the action between the same parties the second division of this court has expressed the opinion very briefly, and I think incidentally, that this contract operated as a deed to convey the fee of the coal to the defendant corporation. If the decision to that effect had been material to a disposition of the case, necessary to its determination, and within the issues presented, I should hold it conclusive as stating the law between these parties, however I might regard it in the nature of a precedent; but the question was not in the case, or at all necessary to its decision. That action was brought to recover damages against the defendant for not mining the coal with reasonable diligence, and for a misuse of the mine, in connection with other properties. The first cause of action failed because there was no proof except that offered of the assumption by the defendant of any such obligation, and the second because whatever was done was held to be within the explicit terms of the contract itself." "It was not vital or essential to any of its conclusions that the contract did or did not convey the coal in fee. That opinion, therefore, does not bind us," etc.

These observations of the court of appeals are now referred to by counsel as dicta. We have examined critically the pleadings in the superior court action, and fully concur with what has just been quoted from the opinion of the court of appeals. No issue with reference to the nature of the lease and the ownership in fee of the coal in place was involved in that action, either directly or indirectly. All that was in controversy between the parties was embraced in matters arising under the provisions of the lease, which did not require an adjudication affecting the ownership of the fee of the land. There was no estoppel created by the superior court judgment which can be set up in bar of this action. The right of the plaintiff, therefore, to sue for the small coal, we think is established. It was her property, and that for which she was allowed to recover herein never became the property of the defendant. It was excluded by the terms of the instrument. Title to it did not pass to the canal company, and when that company appropriated it to its own use it took the property of the plaintiff, for which it is under an obligation to pay. That was determined by the late general term of this court on an appeal from a judgment entered upon a former trial of this action. 58 Hun, 492, 12 N. Y. Supp. 572. It was said in the opinion of the court, that "it is quite apparent that the language of the agreement to which particular attention has been called, exclusive of culm or mine

waste, was adapted to the then supposed worthlessness of that prod-
uct of the mine, and it is equally evident from an interpretation
of the whole instrument that there was no intention on the part
of the plaintiff to convey to the defendant any beneficial result of
mining operations as a gratuity, nor is there any ground for the
defendant to claim the right thereunder to appropriate the same to
its own advantage without due compensation. The manifest de-
sign of the agreement was to authorize the defendant to conduct
such mining operations as would develop a marketable article for
which a marketable compensation was to be paid"; and that "the
utilization by the defendant of the culm, in which it had no prop-
erty, and to which the agreement gave it no right, and which was
in fact owned by the plaintiff, created an independent cause of ac-
tion, which could be enforced herein." The question of the right
of the plaintiff to maintain the action for the culm and the products
of small coal was settled by that adjudication of the general term.
Notwithstanding the criticisms of the learned counsel for the ap-
pellant upon that decision of the general term as being by a divided
court, we regard it as conclusive upon this point.

It only remains to consider the rulings of the referee upon the
subject of the measure of damages. He allowed for the "pea" and
the "buckwheat" coal, and the product that would have passed
through the one-half inch mesh, the value at the time and place at
which that coal was taken or used by the defendant; and these rul-
ings, we think, were proper. It having been determined that all
the product thus taken belonged to the plaintiff, it was hers to
use, sell, or dispose of as she pleased. It was not subject to any
royalty, nor was it affected by any consideration of expense in min-
ing it. It was brought to the surface of the earth and run through
the machinery of the defendant in the same way as other coal, and
as part of the operation of mining. No matter in what shape it
eventually became merchantable, or what treatment it was sub-
jected to to make it a valuable product, it was her property. As
the referee well says:

"The production of this small coal was a necessary incident to the mining of
the larger sizes, for which alone compensation was provided by the agreement
between the parties. It is clear that, if she had chosen to take it away, the
defendant could not have insisted that she should pay anything on account of
any expense that had been incurred in mining it."

The ordinary rule of the measure of damages applicable in cases
of trover and conversion or in actions of assumpsit upon an im-
plied promise to pay is the appropriate rule here. Conditions of
mining and the acts of the defendant have nothing to do with their
accountability for the value of property unlawfully taken by them.
True, the plaintiff had no right to the use of the defendant's ma-
chinery nor its resources to complete the process of preparing the
coal, but it is also true that the defendant had no right to take,
use, or sell the plaintiff's property. It is sought to draw a distinc-
tion between an innocent and a wrongful taking. There is such
a distinction. We need no discussion of its applicability here, for
the conviction cannot be resisted that there was a wrongful taking

of this small coal from the plaintiff. It had become a valuable article of merchandise. It belonged to the plaintiff. The defendant knew its value, took it without the plaintiff's knowledge, and never accounted nor offered to account to her for the product. The referee has allowed less for the value than that value seems really to have been according to the testimony of certain of the witnesses for the defendant. In this view of the subject of the measure of damages, the rulings of the referee striking out certain testimony offered on the examination of Judge Hand were correct. That witness was asked what was the fair market royalty paid for "pea" and "buckwheat" coal, in connection with leases or contracts by which the right to take other and larger sizes of coal was granted. The question involved in this case was not as to the payment of a fair royalty for the privilege of mining this small coal in connection with larger sizes, nor did it appear in any way that there was a general royalty established for mining small coal as a separate article, and this small coal was property which did not come under royalty fixed by any lease. Where the royalties are fixed by leases or contracts, those leases or contracts would constitute the evidence; and a fair market royalty, if it was to be made the basis of a recovery, would necessarily have to be one that applied to a situation and condition of the property similar to that of the plaintiff in this case,—that is to say, not in any way connected with other coal the royalties upon which were established by leases.

The judgment appealed from was correct, and should be affirmed, with costs. All concur.